UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| SILVIA M., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:17-cv-04246-SLD-JEH |
| ANDREW SAUL,[1] | ) |
| Defendant. | ) |

ORDER

Plaintiff Silvia M. filed an application for disability insurance benefits and supplemental security income. The Commissioner of the Social Security Administration ("the Commissioner") denied her application and Silvia seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g). *See* Compl., ECF No. 1. Before the Court are Silvia's Motion for Summary Judgment, ECF No. 13, the Commissioner's Motion for Summary Affirmance, ECF No. 19, and Magistrate Judge Jonathan Hawley's Report and Recommendation ("R&R"), ECF No. 21, which recommends denying Silvia's motion and granting the Commissioner's. Silvia objects to the R&R. *See* Objection, ECF No. 23. The Commissioner has responded to Silvia's objection. *See* Resp. Objection, ECF No. 25. For the reasons that follow, the Objection is OVERRULED and the R&R is ADOPTED. Silvia's Motion for Summary Judgment is DENIED and the Commissioner's Motion for Summary Affirmance is GRANTED.

I.  **Report and Recommendation**

When a magistrate judge considers a pretrial matter dispositive of a party's claim or defense, he must enter a recommended disposition. Fed. R. Civ. P. 72(b)(1). Parties may object

---
[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted for his predecessor.

1

within fourteen days of being served with a copy of the recommended disposition. *Id.* 72(b)(2). The district judge considers de novo the portions of the recommended disposition that were properly objected to, and may accept, reject, or modify the recommended disposition, or return it to the magistrate judge for further proceedings. *Id.* 72(b)(3). If no objection, or only partial objection, is made, the district judge reviews the unobjected portions of the recommendation for clear error only. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The district judge "may reconsider *sua sponte* any matter determined by a magistrate judge" even if no party objects. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009).

The R&R sets forth the relevant procedural background, including an overview of the administrative law judge's ("ALJ") decision, *see* R&R 1–14, so the Court will not repeat that discussion here. The R&R also sets forth the four arguments Silvia makes in her summary judgment motion:

> 1) the ALJ erred by failing to build a logical bridge between Silvia's cane usage, Dr. Eilers' opinion, Dr. DePhillips' opinion, and Dr. Shepherd's opinion to the conclusion Silvia is not disabled; 2) the ALJ committed harmful legal error in the [residual functional capacity] [("]RFC["])] assessment; 3) the ALJ committed harmful legal error by failing to apply the Medical Vocational Guidelines (Grid) Rule 201.17; and 4) the A[ppeals] C[ouncil] committed harmful reversible error because it failed to include within the administrative record new and material evidence with a reasonable probability that the evidence would change the outcome of the decision.

*Id.* at 14. Judge Hawley recommends rejecting all four arguments and affirming the ALJ's decision. *Id.* at 27. Silvia objects to Judge Hawley's analysis of her first three arguments. The Court reviews those issues de novo. The Court has reviewed the remainder of the R&R for clear error and found none.

## II.   Analysis

The court reviews a decision denying benefits to determine only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quotation marks omitted). The court cannot reweigh the evidence, decide questions of credibility, or substitute its own judgment, but must "nonetheless conduct a critical review of the evidence." *Id.* "In rendering a decision, an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but must build a logical bridge from the evidence to his conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotation marks omitted). The court must "be able to trace the path of the ALJ's reasoning from evidence to conclusion." *Aranda v. Berryhill*, 312 F. Supp. 3d 685, 689 (N.D. Ill. 2018).

### a. Cane Usage

Silvia argues that "[t]he ALJ played doctor in concluding the medical evidence does not support her need for a cane despite her presenting to appointments using the cane." Objection 3. "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). "Typical cases of ALJs impermissibly playing doctor are when they either reject a doctor's medical conclusion without other evidence or when they draw medical conclusions themselves about a claimant without relying on medical evidence." *Back v. Barnhart*, 63 F. App'x 254, 259 (7th Cir. 2003)

(quotation marks and citation omitted); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) ("The cases in which we have reversed because an ALJ impermissibly 'played doctor' are ones in which the ALJ failed to address relevant evidence.").

The "playing doctor" principle does not apply here. No doctor prescribed a cane to Silvia or recommended that she use one, so the ALJ did not reject a medical conclusion. *Cf. Czarnecki v. Colvin*, 595 F. App'x 635, 644–45 (7th Cir. 2015) ("[O]ne of [the plaintiff's] physicians, after more than a year of treating her, had *prescribed* a cane, and the ALJ impermissibly 'played doctor' by substituting her own opinion that a cane really wasn't necessary."). The ALJ noted Silvia's testimony that she needed to use a cane, R. 33,[2] and that she sometimes presented to doctor's appointments with a cane, R. 29. But she found that the record did not support ongoing use of the cane. *Id.* This is supported by substantial evidence. Records document Silvia presenting with a cane only for a brief period of time in 2015. *See* R. 474 (July 7, 2015); R. 441 (August 10, 2015). And there is medical evidence in the record that conflicts with the necessity to use a cane to walk. *See, e.g.*, R. 396 (Dr. Carlton observing that she could walk more than 50 feet without assistance). The ALJ was "allowed to . . . weigh the evidence and make appropriate inferences from the record." *Seamon v. Astrue*, 364 F. App'x 243, 247 (7th Cir. 2010) (citing *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004)). The Court can follow the ALJ's reasoning and cannot reweigh the evidence to come to a different conclusion.

   **b. Medical Opinion Evidence**

Silvia argues that the ALJ erred in assessing the treating physicians' opinions. Objection 3. Social Security regulations provide that an ALJ will "evaluate every medical opinion [the

---

[2] The administrative record can be found at ECF No. 8. Citations to the record take the form: R. ___.

Social Security Administration] receive[s]." 20 C.F.R. § 404.1527(c).[3] "If [th]e [ALJ] find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [sh]e will give it controlling weight." *Id.* § 404.1527(c)(2). If the ALJ does not give the treating source's opinion controlling weight, she must consider the following factors in determining how much weight to give it: length and extent of the treatment relationship, *id.* § 404.1527(c)(2)(i)–(ii); how much relevant evidence is presented to support the opinion, *id.* § 404.1527(c)(3); how consistent the opinion is with the record as a whole, *id.* § 404.1527(c)(4); whether the source is a specialist in the area of her opinion, *id.* § 404.1527(c)(5); and any other factor brought to the Social Security Administration's attention, *id.* § 404.1527(c)(6). "[T]he ALJ must provide some explanation for her decision to discount a treating physician's opinion, [but the court's] review is deferential: the ALJ's decision must stand as long as she has 'minimally articulated' her reasons for rejecting the treating doctor's opinion." *Henke v. Astrue*, 498 F. App'x 636, 639 (7th Cir. 2012) (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)).

    **1. Dr. Shepherd**

Silvia argues that "[t]he ALJ failed to adequately assess Dr. Shepherd's unopposed treating source opinion pursuant to the regulations and thus the decision should be reversed." Objection 4. Dr. Shepherd filled out a mental capacity assessment form on September 2, 2016. R. 446. He checked boxes to indicate the degree of limitation Silvia had in four broad areas: understanding and memory, sustained concentration and persistence, social interaction, and

---

[3] The regulation governing medical opinion evaluation for supplemental security income claims is substantially the same. *See* 20 C.F.R. § 416.927(c). The Court cites only to the disability insurance benefits regulation for efficiency.

5

adaption. For example, he indicated that Silvia was markedly restricted in her ability to carry out short and simple instructions and extremely limited in her ability to maintain attention and concentration for extended periods of time. R. 444. The ALJ gave this opinion "little weight." R. 36.

Silvia argues that Dr. Shepherd's opinion deserved controlling weight because "he is the only qualified treating mental health practitioner that gave an opinion." Objection 5. But, as explained above, a treating doctor's opinion need only be given controlling weight if it is consistent with the record and adequately supported. That no other treating physician gave an opinion on a matter is not relevant to the decision to give the opinion controlling weight. Second, Silvia argues that the ALJ erred in discounting Dr. Shepherd's opinion because it was based on her subjective complaints. *Id.* at 4. While this might be erroneous on its own, *see Price v. Colvin*, 794 F.3d 839, 840 (7th Cir. 2015) ("[P]sychiatric assessments normally are based primarily on what the patient tells the psychiatrist."), the ALJ provided other sound reasons for discounting Dr. Shepherd's opinion. *See McKinzey*, 641 F.3d at 890–91 (upholding the ALJ's credibility determination even where the ALJ made some mistakes because the ALJ cited to other substantial evidence to support her conclusion).

It is clear from the ALJ's decision that she considered the regulatory factors in determining what weight to give Dr. Shepherd's opinion. *See* R. 36. She noted that Dr. Shepherd's opinion was provided soon after his initial evaluation of Silvia. *Id.*; 20 C.F.R. § 404.1527(c)(2)(i). Elsewhere in her decision, the ALJ noted that Silvia saw Dr. Shepherd just three times prior to his evaluation. R. 30–31. The ALJ next noted that the opinion was vague and supported only by listing Silvia's diagnoses. R. 36; 20 C.F.R. § 404.1527(c)(3). She also noted that the opinion was inconsistent with Dr. Shepherd's own treating notes—which state that

Silvia was not in distress, that her attention span and concentration were within normal limits, that her memory was intact, and that she had seen improvements after just a few weeks of treatment—and with the longitudinal record. R. 36; 20 C.F.R. § 404.1527(c)(4). Silvia points to some evidence that the opinion is consistent with—lay opinion evidence from her son and husband—but that evidence was considered by the ALJ. *See* R. 33–34. The ALJ was allowed to weigh this evidence and determine that the record was more inconsistent than consistent with the opinion. The ALJ certainly at least minimally articulated her reasons for discounting Dr. Shepherd's opinion, so the Court cannot overturn her determination.[4]

### 2. Dr. DePhillips

Silvia argues that the ALJ erred in assessing Dr. DePhillips's opinion and that it deserved controlling weight. Objection 7. On September 22, 2014, Dr. DePhillips, a neurosurgeon, opined that Silvia was "currently permanently and totally disabled . . . due to the work injury of 10/11/09" and "the effects of the [2009] injury and the condition of [her] lumbar spine as it exist[ed] . . . and the symptoms provoked by those injuries." R. 388. The ALJ gave this opinion "very little weight." R. 34.

Again, it is clear that the ALJ considered the proper factors. She noted that Dr. DePhillips was a specialist. *Id.*; 20 C.F.R. § 404.1527(c)(5). She found Dr. DePhillips's opinion broad and conclusory. R. 34; 20 C.F.R. § 404.1527(c)(3). She also noted that although Dr. DePhillips opined that Silvia's disability was due to her 2009 injury, Dr. DePhillips had not treated her for years. R. 34; 20 C.F.R. § 404.1527(c)(2)(i). Moreover, the ALJ noted that Dr.

---

[4] Silvia also argues that the ALJ failed to note that Dr. Shepherd's 2016 assessment was subsequent to the state agency reviewers' opinions. Objection 6. The Court fails to see how this is relevant to assessing the weight given to Dr. Shepherd's opinions. To the extent it might be relevant to assessing the weight to be given to the state agency reviewers' opinions, the Court finds the argument underdeveloped and waived. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).

DePhillips's opinion was inconsistent with Dr. Bernal's opinion in 2011 that Silvia was not disabled and with Dr. Bernal's treatment records from 2011 and 2013. R. 34; 20 C.F.R. § 404.1527(c)(4). For instance, Silvia did not complain of back or neck pain to Dr. Bernal until years after she began seeing him and years after her alleged date of onset. *See* R. 382 (complaining of neck pain, apparently due to a car accident, in September 2014); R. 421 (complaining of neck and back pain in March 2015). The ALJ also correctly noted that a claimant's inability to work is an opinion reserved to the Commissioner. R. 34; 20 C.F.R. § 404.1527(d)(1).

Silvia argues that there is "extensive support" in the record for Dr. DePhillips's opinion. Objection 7. She notes the testing and objective records that Dr. DePhillips reviewed, but the ALJ also noted Dr. DePhillips's course of treatment, R. 28, and that Dr. DePhillips reviewed Silvia's "clinical symptoms, radiographic imaging and recent lumbar discogram," R. 34. The ALJ was entitled to weigh the evidence and determine that Dr. DePhillips's opinion was mostly inconsistent with the record, particularly where he did not cite to any specific findings from his testing or examinations or give an explanation of how the evidence supported his opinion. *See* 20 C.F.R. § 404.1527(c)(3). Silvia also notes that other physicians gave similar opinions, but only points to Dr. Eilers's opinion and Dr. Malek's "agree[ment] that surgery should be decided by Dr. DePhillips and S[i]lvia." Objection 7. As discussed below, the ALJ did not commit reversible error in giving little weight to Dr. Eilers's opinion. *See infra* Section II(b)(3). And Dr. Malek did not provide an opinion on the severity of Silvia's impairments. R. 427. The ALJ minimally articulated her reasons for discounting this opinion, so the Court will not remand on this basis.

### 3. Dr. Eilers

Silvia argues that the ALJ erred in giving Dr. Eilers's opinion little weight. Objection 8. She argues that the ALJ failed to build a logical bridge from the evidence to her conclusion because she "did not properly weigh the opinion . . . against the other medical opinions and evidence in the record before rejecting the opinion." *Id.* She also argues that the ALJ disregarded critical evidence. *Id.* Dr. Eilers opined that Silvia's "injuries are directly related to her fall of 10/11/2009." R. 442. He then opined that "[s]he is not able and will never be able to return to her competitive employment . . . and . . . she is probably permanently and totally disabled from any competitive employment, as it would have to be sedentary work . . . and she does not have the skills to carry that out." *Id.*

Again, it is clear that the ALJ considered the regulatory factors. She found that Dr. Eilers's opinion was inconsistent with the evidence of record, particularly Silvia's presentations to Dr. Bernal. R. 35; 20 C.F.R. § 404.1527(c)(4). She noted again that Dr. Bernal did not think that Silvia was physically disabled. R. 35. The ALJ also noted that Silvia had received only limited and conservative treatment and that there were gaps in her treatment. *Id.* For instance, the record shows that Silvia saw Dr. Bernal once in 2012, and then not again until November 2013. R. 367–68. And even after Dr. Eilers's examination, Silvia inconsistently complained of back pain to Dr. Bernal. *Compare* R. 474 (complaining of lower back pain on July 7, 2015), *with* R. 479 (denying concerns other than pain in the upper abdomen in October 2015). The ALJ cited the results of Dr. Eilers's examination, R. 29, but found that the above described evidence outweighed the evidence consistent with his opinion. The Court can trace the ALJ's reasoning from evidence to conclusion, so it will not remand on this basis either.

**c. RFC**

Silvia argues that the ALJ erred by finding that she had the RFC to perform full time light work. Objection 9. She also argues that the ALJ failed to take into consideration evidence that she "would have difficulty concentrating because she is depressed, anxious, and has medication side effects." *Id.* Silvia argues that the ALJ's finding that she has the functional capacity to engage in simple, routine, and repetitive tasks does not adequately account for her moderate limitations in concentration, persistence, and pace. *Id.* at 10.[5]

An "ALJ must determine an individual's RFC, or what an individual can still do despite his or her limitations, based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (quotation marks omitted). The ALJ here did just that. R. 26–37. Silvia does not point to any evidence that the ALJ failed to consider. She points to Dr. Shepherd's opinion that she would miss four days of work or more each month, but, as discussed in Section II(b)(1), the ALJ properly discounted that opinion. The ALJ considered Silvia's testimony, the medical records, testimony from Silvia's son and husband, and the opinion evidence. She found that Silvia's reported limitations were not consistent with the record, R. 33, 37, and included limitations in the RFC that were supported by the record, R. 25.

The Court also finds that the ALJ's RFC determination adequately accounts for Silvia's limitations in concentration, persistence, and pace. Generally, an ALJ "may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019)). But here, the

---

[5] Silvia also objects to the ALJ's consideration of her cane usage, Objection 10–11, but the Court has already addressed that argument, *see supra* Section II(a).

ALJ went further by including in the RFC that Silvia "could be off task up to 15% of the work day and have one absence per month or 10 absences per year." R. 25; *see Crump*, 932 F.3d at 570–71 (faulting the ALJ for failing to include as part of the RFC that the claimant might be off task during the day and might require two unscheduled absences per month). Moreover, the ALJ gave great weight to the state agency reviewing physician's opinion that Silvia "has the cognitive capacity to understand and remember instructions for simple work of a routine and repetitive type" and that she "retains sufficient attention and concentration to persist at and complete work activities for the usual periods of time required in the general work force, to the extent her physical condition allows." R. 37. The ALJ therefore relied on a medical expert for the determination that limiting Silvia to simple, routine, and repetitive tasks would account for her limitations in concentration, persistence, and pace. *See Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("[A]n ALJ may reasonably rely upon the opinion of a medical expert who translates . . . findings [that the claimant has difficulties with concentration, persistence, and pace] into an RFC determination."); *Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015) (finding that the ALJ adequately addressed limitations in concentration, persistence, and pace where the "RFC findings accurately reflected [a doctor's] assessment by restricting [the claimant] to simple, routine tasks and limited interactions with others").

### d. Grid Rule

Silvia's last argument is that "[t]he ALJ committed harmful error by failing to correctly assess the Grid rules in light of a sedentary RFC." Objection 11. Essentially Silvia argues that, had the ALJ considered the evidence in the manner described in the rest of her arguments, the ALJ would have limited her to sedentary work and she would have been found disabled pursuant

11

to Grid Rule 201.17, 20 C.F.R. pt. 404, subpt. P, app. 2, tbl. 1. In light of the Court's disposition of Silvia's other arguments, this argument has no merit.

**III.     Conclusion**

Accordingly, the Objection, ECF No. 23, is OVERRULED and the Report and Recommendation, ECF No. 21, is ADOPTED. Plaintiff Silvia M.'s Motion for Summary Judgment, ECF No. 13, is DENIED and the Commissioner's Motion for Summary Affirmance, ECF No. 19, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision in this matter is AFFIRMED. The Clerk is directed to enter judgment and close the case.

Entered this 23rd day of September, 2019.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
